UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LOUIS R. PASTORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:15-cv-00892-TWP-DKL |
| ) | |
| DUSTIN DIXON, Sergeant, in individual ) | |
| capacity as officer of the Hamilton County ) | |
| Sheriff's Department, and ) | |
| NATHAN A. BIDDLE, Deputy, in individual ) | |
| capacity as officer of the Hamilton County ) | |
| Sheriff's Department, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants Dustin Dixon ("Sergeant Dixon") and Nathan A. Biddle ("Deputy Biddle") (collectively "Defendants"). (Filing No. 38.) During a traffic stop by police officers, Plaintiff Louis R. Pastore ("Pastore") was severely injured when a police dog was released on him as he attempted to exit his vehicle. On May 8, 2015, Pastore filed a Complaint asserting that the Defendants used excessive force in violation of 42 U.S.C. §1983 by using a forty millimeter foam projectile launcher and a police K-9 when arresting him. (Filing No. 1-1.) On July 6, 2016, Defendants filed a Motion for Summary Judgment, asserting that they are entitled to qualified immunity and they did not use excessive force. For the following reasons, the Court **GRANTS** in part and **DENIES** in part the Defendants' Motion for Summary Judgment.

### I.     BACKGROUND

Except where noted otherwise, the following facts reflect Pastore's account of the events

as well as evidence from the police in-car videos[1]. As with any summary judgment motion, the facts are reviewed in the light most favorable to Pastore, the nonmoving party, and the Court draws all reasonable inferences in Pastore's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

On March 7, 2014, after taking antidepressant medicine, smoking a marijuana cigarette, and consuming four or five alcoholic beverages, Pastore left the Moon Dog Tavern located on 96th Street just east of Keystone Parkway in Indianapolis, Indiana. Pastore entered his vehicle and headed west towards Keystone Parkway at approximately 11:50 p.m. While driving his patrol car east on 96th Street from Keystone Parkway towards the Moon Dog Tavern, Andrew Zellers, an officer with the Carmel Police Department, observed Pastore's Jeep travelling at a high rate of speed and switching lanes without using a turn signal. Officer Zellers visually estimated that Pastore was driving at a speed of fifty-five miles per hour in a thirty-five miles per hour zone. Officer Zellers made a U-turn and activated his emergency lights as he pulled behind Pastore's vehicle. Because the vehicle did not immediately stop, Officer Zellers activated his police siren as he intended to issue citations for the traffic violations he had witnessed.

Pastore had his windows up and his radio on. He did not see the police lights or hear Officer Zellers' siren until he approached a left turn lane at the intersection of 96th Street and Keystone Parkway. Officer Zellers believes this was nearly one minute after he activated his equipment. Because his vehicle was in the left turn lane of 96th Street, Pastore considered the safest place to pull over was after he went through the intersection. Thus, he turned left and travelled through the intersection of 96th and Keystone Parkway. After turning left, Pastore pulled onto the right

---

[1] The Defendants designated as evidence five video-clips from Carmel Police Department's In-Car Video Equipment relating to the March 7-8, 2014 extraction of Plaintiff Louis R. Pastore from his vehicle and Mr. Pastore's arrest. (See Filing No. 40 and 42).

shoulder of southbound Keystone Parkway. Pastore was not certain that he was the subject of the traffic stop, so he continued to roll slowly in the shoulder lane. He made a complete stop after several seconds and then placed his vehicle into park. Unsure as to why he had been pulled over, Pastore remained in his vehicle and waited for the officer to approach his car and ask for his license and registration. However, Officer Zellers did not approach Pastore's Jeep and remained approximately thirty feet behind Pastore's vehicle. Meanwhile, Pastore fell asleep (or passed out) while waiting for Officer Zellers to approach his Jeep. While he was asleep and unresponsive in his driver's seat, Pastore vomited on himself and on his driver's side window.

Officer Zellers exited his patrol car but still did not approach Pastore's Jeep; instead, he stood by his vehicle thirty feet away and commanded Pastore to put his hands outside the window. Pastore did not hear the commands due to the distance, traffic noise, and because by this time he had already passed out. When Pastore did not reply to the initial command, over the course of eight minutes, another officer with the Carmel Police Department who had arrived on the scene, John K. Govin, used a loud speaker and continued commanding Pastore to place his hands outside of the window. Officer Govin also remained at least thirty feet behind Pastore's vehicle and made the commands in both English and Spanish. Pastore again did not respond. The officers noted that Pastore was laying down and appeared to be passed out in the front seat. Soon thereafter, officers received information through their dispatch radios that the vehicle was registered to Louis Pastore and that Pastore had a driving status of "Suspending Infraction," a prior arrest for Operating While Intoxicated in 2010, as well as for Operating While Intoxicated and Resisting Law Enforcement in 2013.

At 12:13 a.m., twenty-five minutes had elapsed since Officer Zellers first pulled Pastore over. Several officers from the Hamilton County Sheriff's Department and Carmel Police Department had arrived on the scene. Sergeant Dixon heard about the incident on his radio and offered his

assistance, noting that he was nearby with his K-9, Dibo. ([Filing No. 39-4](#).) Deputy Biddle heard Officer Zellers radio for assistance, so he also traveled to the scene. Soon there were nine police officers in total on the scene, including the Defendants, Sergeant Dixon and Deputy Biddle. Pastore remained unresponsive and passed out in the front seat of his vehicle. Prior to Sergeant Dixon's and Deputy Biddle's arrival to the scene, Officer Govin had commanded Pastore to get out of the Jeep or he will be bit. Officer Govin repeated similar statements at 12:14 a.m. and 12:16 a.m. Sergeant Dixon did not observe any movement in Pastore's vehicle or hear a vocal response to the warnings. ([Filing No. 39-3 at 2](#).)

The officers closed southbound Keystone Avenue to all traffic. At approximately 12:17 a.m., Sergeant Dixon and Deputy Biddle pulled alongside Pastore's Jeep with their rifles aimed. Deputy Biddle then fired a forty millimeter foam projectile launcher into the rear driver's side window of Pastore's vehicle. The purpose of the foam projectile launcher was to break the window to allow a chemical substance to enter the vehicle, allow a passage way for the K-9 to enter, or to permit police officers to open the rear door. Rather than shattering the window as intended, the foam projectile launcher created only a small hole in Pastore's rear driver's side window. An officer then commanded Pastore to place both hands outside the window. However, Pastore remained passed out and again did not respond.

At 12:18 a.m., several officers approached the vehicle with their weapons drawn and placed stop sticks under Pastore's tire to prohibit him from driving away. An officer then used his baton and shattered Pastore's front driver's side window. After hearing the window shatter, Pastore finally woke up. Officers commanded Pastore to show his hands, open his door, and exit the vehicle. Pastore attempted to exit the Jeep with his hands raised, but he could not unlatch the seat belt and turned back to release the button. While Pastore's hands were raised up and outside

4

of the Jeep, Sergeant Dixon ordered Dibo to attack Pastore. Sergeant Dixon did not issue a warning that he was about to release his K-9. Dibo bit into Pastore's left arm and started to pull Pastore from the car, but Pastore was still restrained by his seatbelt. Officer Zellers then cut Pastore's seat belt, which had become tangled around Pastore's left arm. Dibo continued to bite Pastore for approximately thirty seconds. Officers pushed Pastore to the ground on his stomach and pressed their knees into his back while they handcuffed him. After Pastore was placed in handcuffs, Sergeant Dixon physically removed Dibo.

The Carmel Fire Department transported Pastore to Riverview Hospital where he was treated for his injuries before he was transported to jail. In August 2014, Pastore pled guilty to Class A misdemeanor Resisting law Enforcement and Class D felony Operating a Vehicle while Intoxicated while having a prior conviction. On May 8, 2015, Pastore filed a Complaint in the Marion Superior Court asserting the Defendants used excessive force when arresting him in violation of his Fourth Amendment rights. ([Filing No. 1-1](#).) On June 5, 2015, Defendants removed the case to federal court. Defendants now seek summary judgment, asserting that Pastore's Fourth Amendment rights were not violated, they are entitled to qualified immunity, and Deputy Biddle should not be liable for failing to remove Sergeant Dixon's K-9. ([Filing No. 38](#).)

## II.   SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the

non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007) (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.     DISCUSSION

The Defendants moved for summary judgment on Pastore's Fourth Amendment claim of excessive force, asserting the force was reasonable because Pastore failed to comply with the officers' commands, and he was a possible danger to the community and the officers. The Defendants also moved for summary judgment on Pastore's claim that Deputy Biddle should be

held liable for failing to intervene when Sergeant Dixon ordered the K-9 to attack Pastore. The Defendants also assert they are entitled to qualified immunity, which the Court will address first.

## A. Qualified Immunity

The Defendants assert that they are entitled to qualified immunity against Pastore's alleged Fourth Amendment claim. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citation and quotation marks omitted).

To determine whether qualified immunity applies, the Court must determine whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court also determines "whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*

### 1. Violation of a Constitutional Right

Pastore alleges that the Defendants violated his Fourth Amendment right when they used excessive force while arresting him. Excessive force claims are analyzed using the Fourth Amendment's "reasonableness" standard in the context of "an arrest, an investigatory stop or any other type of seizure." *Stainback v. Dixon*, 569 F.3d 767, 771 (7th Cir. 2009). The Fourth Amendment protects against the use of force that is not "objectively reasonable." *Kinney v. Ind.*

7

*Youth Ctr.*, 950 F.2d 462, 465 (7th Cir. 1991). The "right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). However, this right is not without limits; a "police officer's use of force is unconstitutional if, judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003) (citation and quotation marks omitted).

To determine reasonableness, courts must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985) (citation and quotation marks omitted). In considering this balance, the court considers the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. When considering this balance, the court views the circumstances "from the perspective of a reasonable officer on the scene." *Id*. The ultimate question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Graham at* 397. And, "[b]ecause questions of reasonableness are not well-suited to precise legal determination, the propriety of a particular use of force is generally an issue for the jury." *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994). *Accord. Phelps v. City of Indianapolis*, No. 1:02-cv-1912-DFH-VSS, 2004 WL 1146489, at *9 (S.D. Ind. May 10, 2004) (noting that reasonableness "is often a question for a jury, though in some cases the issue can be decided as a matter of law").

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490

U.S. at 396. But an officer's perceptions justify his use of force only to the extent his perceptions are reasonable. *E.g.*, *Baird v. Renbarger*, 576 F.3d 340, 344–45 (7th Cir. 2009) ("Renbarger's subjective concerns do not transform this setting into one calling for such a heavy-handed use of force."). Therefore, "[t]he reasonableness of the force used depends on the totality of the facts and circumstances known to the officer at the time the force is applied." *Abbott*, 705 F.3d at 724.

The alleged excessive force consists of Deputy Biddle firing a forty millimeter foam projectile launcher into Pastore's rear window and Sergeant Dixon ordering his K-9 to attack Pastore. The Defendants claim that they did not use unreasonable force against Pastore because Pastore previously resisted law enforcement, Pastore did not respond to numerous orders or commands, and the officers were unaware if Pastore had a weapon or was planning to flee.

Under the factors articulated in *Graham*, questions of fact remain that should be resolved by a jury. The severity of the crimes at issue—speeding, driving with a suspended status, and switching lanes without using a turn signal—were minimal. These traffic violations did not involve physical violence or damage to property. Additionally, as Pastore persuasively argues, his prior arrests for resisting arrest and operating while intoxicated are not relevant to the incident that occurred on March 7, 2014. *See Becker v. Elfreich*, 821 F.3d 920 (7th Cir. 2016) (holding an officers' force was not justified when the underlying crime occurred several weeks earlier, there was no evidence that the plaintiff was still armed, and the plaintiff did not resist or attempt to flee).

Pastore argues that he did not pose a danger nor was he resisting arrest because it was clearly visible to all officers that Pastore was unconscious. Defendants contend that their actions were objectionably reasonable because they did not know whether Pastore had access to a weapon or was planning to flee. The Court respectfully disagrees. To begin, officers had no articulable rational basis for believing that Pastore was armed and there was no evidence that he was known

9

to carry or possess weapons. The Court recognizes that officers are often forced to make split-second decisions, however, in this case the evolving situation does not justify the amount of force used. Over the course of thirty minutes, the officers discussed their tactical plan for removing Pastore from the vehicle. Whether it was objectively reasonable for Sergeant Dixon to perceive Pastore's unresponsiveness as a threat to the officers' safety that warranted ordering a K-9 to attack Pastore, severely injuring him, is highly disputed and an issue for trial.

With respect to the officers' concern that Pastore was planning to flee, Pastore was visibly passed out. Throughout the videos, the officers discussed that Pastore appeared to be passed out in the front seat, he was not responsive to light and was not moving. Officers broadcast over the radio that "there was no movement or response from the driver of the vehicle", and that "he must be laying down in the front seat or something because I can't see him". Whether it was objectively reasonable for Sergeant Dixon to believe Pastore was planning to flee is an issue for trial. In addition, whether it was objectively reasonable to perceive Pastore's slowness to stop his vehicle thirty minutes earlier as actively resisting or attempting to evade arrest, is also highly disputed and an issue for trial. Upon review of the designated evidence and the totality of the circumstances, the reasonableness of Sergeant Dixon's actions during the encounter with Pastore should be determined by the trier of fact and summary judgment is not appropriate in this regard.

The Court, however, determines from the totality of circumstances that Deputy Biddle did not use greater force than was reasonably necessary to make the arrest when he fired the foam projectile launcher. "Force is reasonable only when exercised in proportion to the threat posed…" *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010). Deputy Biddle unsuccessfully fired a forty millimeter foam projectile launcher, intending to shatter Pastore's window but instead created only a small hole in Pastore's rear driver's side window. His intent in firing the projectile

was to gain entry into the vehicle and not to harm Pastore. The evidence presented shows that Pastore was not injured by the launcher, and Pastore concedes that he remained unresponsive, even after Deputy Biddle fired the launcher. In considering the issue of qualified immunity, the Court finds that Pastore has not shown that Deputy Biddle used excessive force. Pastore cites *Phillips* for the proposition that Deputy Biddle's use of the projectile exceeded minimal force. *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 522 (7th Cir. 2012). The Court concludes, as the Defendants persuasively argue, the instant case is distinguishable from *Phillips* because the plaintiff in *Phillips* was injured when the officers fired the launcher directly at her. Deputy Biddle did not target Pastore when firing the launcher, and Pastore was unharmed by the use of the launcher. Pastore has not shown that Deputy Biddle used excessive force against him. Accordingly, the Court finds the evidence supports Deputy Biddle's qualified immunity against the excessive force claim for using the foam projectile launcher.

  **2. Clearly Established Right**

Pastore's Fourth Amendment rights must also be clearly established. "To be clearly established, at the time of the challenged conduct, the right's contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1006 (7th Cir. 2012) (citation and quotation marks omitted). "While a case directly on point is not required, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citation and quotation marks omitted).

In the context of a claim for excessive force, "there is no doubt that [case law] clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier*, 533 U.S. at 201–02.

> Yet that is not enough. Rather, we emphasized in *Anderson* "that the right the official is alleged to have violated must have been 'clearly established' in a more

11

> particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." 483 U.S. at 640. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Id.* at 202.

The Defendants rely on *Smith* to argue that they are entitled to qualified immunity regarding the K-9 because Pastore failed to comply with the officers' commands to exit the vehicle, he resisted arrest when the officers attempted to pull him from the Jeep, and Pastore pled guilty to resisting arrest. *See Smith v. Ross*, No. 1:13-CV-00341-TWP-DML, 2014 WL 5285954, at *3 (S.D. Ind. Oct. 15, 2014) (holding officers were entitled to qualified immunity where a plaintiff, who fled, locked himself in a garage and was attacked by a K-9, had not shown a "clearly analogous case establishing a right to be free from the specific conduct at issue" or "conduct [that] is so egregious that no reasonable person could have believed that it would not violate clearly established right"). The Defendants also assert that their actions were objectionably reasonable because they did not know whether Pastore had access to a weapon or was planning to flee.

Pastore relies on *Becker* when responding to the Defendants' qualified immunity claim and asserts that it was clearly established at the time of his arrest in 2014 that no more than minimal force was permissible.

> [P]rior to 2011 it was well-established that "police officers cannot continue to use force once a suspect is subdued." *Abbott,* 705 F.3d at 732. And "it was well-established in this circuit that police officers could not use significant force on nonresisting or passively resisting suspects." *Id.* Further, it was clearly established that [] only minimal force is warranted where the accused is passively resisting. *Phillips,* 678 F.3d at 529. Additionally, we have previously held that it was clearly established "that officers could not repeatedly use an impact weapon to beat into submission a person who was not resisting or was merely passively resisting officers' orders." *Abbott,* 705 F.3d at 733.

*Becker*, 821 F.3d at 928–29 (citing *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706 (7th Cir. 2013); *Phillips*, 678 F.3d at 529). Pastore contends that he was not resisting arrest, and his failure to respond was at most "passive non-compliance of a different nature than the struggling that [courts] have found warrants escalation of force." *Becker*, 821 F.3d at 927 (citing *Phillips,* 678 F.3d at 525). Pastore asserts that prior to Deputy Biddle shooting the forty millimeter foam projectile launcher into Pastore's rear window and Sergeant Dixon ordering the K-9 to attack Pastore for nearly forty seconds, the Defendants were aware that Pastore was unconscious, unresponsive, and not resisting.

Pastore also distinguishes the case at issue from *Smith*. Unlike *Smith*, Pastore did not flee, he was visible to the Defendants at all times, and the Defendants had over thirty minutes to consider alternative minimal force solutions to remove Pastore from the Jeep. Pastore argues that alternative solutions included simply approaching his vehicle and knocking on the driver's window to awaken him. When removing him from the Jeep, the officers could have used voice commands and hand pressure rather than the K-9. Pastore lastly contends, and the Defendants do not dispute, that Pastore's pleading guilty to resisting law enforcement and drunk driving following the incident has no bearing on his excessive force claim.

Pastore has shown that Sergeant Dixon's force was "so plainly excessive under the circumstances that a reasonable officer would have known of the constitutional violation" and that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." The use of excessive force is understood to be a constitutional violation, and Pastore's evidence and facts show the force used by Sergeant Dixon, specifically Sergeant Dixon releasing the K-9 as Pastore attempted to exit the vehicle with his hands up, was so clearly

excessive to defeat the claim for qualified immunity. Therefore, the Court determines that the evidence does not support Sergeant Dixon's qualified immunity claim.

**B.      Failure to Intervene**

The Defendants also argue that Deputy Biddle is entitled to summary judgment regarding Pastore's claim that Deputy Biddle failed to intervene when Sergeant Dixon ordered his K-9 to attack Pastore.

> [O]ne who is given a badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. [] This responsibility to intervene applies equally to supervisory and nonsupervisory officers. [] An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring.

*Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). The Defendants contend that Deputy Biddle did not have a realistic opportunity to intervene to prevent harm from occurring to Pastore because releasing the K-9 was made after a split second determination. The Defendants further argue that Sergeant Dixon alone is the K-9's handler, and there is no evidence that the K-9 would have listened to Deputy Biddle, even if he had attempted to issue a release command. In response, Pastore contends that, despite Sergeant Dixon directing the K-9, Deputy Biddle implicitly approved the tactical plan to use force. Pastore argues that releasing the K-9 was not a split second decision because, while he was unconscious and not resisting, the Defendants had time to figure out alternative methods in order to elicit a response from Pastore.

Pastore is correct that the officers had nearly a half hour to figure out how to remove him from the vehicle; however, the decision to actually release Dibo rested solely with Sergeant Dixon. Pastore has designated no evidence to show that Deputy Biddle implicitly approved a tactical plan

14

to release Dibo without regard to the fact that Pastore was attempting to exit the vehicle with his hands up. This decision was Sergeant Dixon's alone. Likewise, it is undisputed that Deputy Biddle was not the K-9 handler, and he had no realistic opportunity to intervene by recalling Dibo, thus preventing harm from occurring to Pastore prior to or after Dibo was released.

For these reasons, the Court grants summary judgment on behalf of Deputy Biddle on the failure to intervene claim.

### IV.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part the Motion for Summary Judgment filed by Defendants Dustin Dixon and Nathan A. Biddle. (Filing No. 38.) Summary judgment is **granted** with respect to Officer Biddle and he is **dismissed** from this action. Resolving factual disputes in Pastore's favor, a reasonable jury could find that Sergeant Dixon's use of force was objectively unreasonable. In addition, clearly established law would have notified Deputy Biddle that the Fourth Amendment would prohibit his use of force under the circumstances present here. Pastore's claim against Sergeant Dixon for use of excessive force will proceed to trial.

**SO ORDERED.**

Date: 12/30/2016

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Darren J. Murphy
HOWARD & ASSOCIATES
dmurphy@ori.net

Michael K. Sutherlin
MICHAEL K. SUTHERLIN & ASSOCIATES, PC
msutherlin@gmail.com

Donald B. Kite, Sr.
WUERTZ LAW OFFICE LLC
don@wuertzlaw.com